COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Decker and O'Brien
Argued at Norfolk, Virginia

**PUBLISHED**

NANCY MARCELLETTE FRIEDMAN

v.      Record No. 1225-17-1

MONA SMITH AND LAURA GOLDSTEIN,
 PERSONAL REPRESENTATIVES OF THE
 ESTATE OF GERALD JAY FRIEDMAN[1]

OPINION BY
JUDGE ROBERT J. HUMPHREYS
MARCH 20, 2018

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

James A. Evans (Evans & Bryant, PLC, on brief), for appellant.

Kristi A. Wooten (Jordan A. Fanney; Wooten Law Group, PLC, on
brief), for Gerald Jay Friedman.

On July 31, 2017, Gerald Jay Friedman ("husband") and Nancy Marcellette Friedman

("wife") were divorced by a decree of divorce from the bond of matrimony entered by the Circuit

---

[1] When this appeal was filed, Gerald Friedman was named as appellee. Counsel for husband filed a "Suggestion of Death," pursuant to Code § 8.01-20, asserting that husband died on September 20, 2017, as part of the record in the circuit court. Shortly before oral argument in this case, wife filed an uncontested motion with this Court to amend the style of this case to substitute the parties' two daughters as appellees in their capacity as the personal representatives of husband's estate. "[W]here the consequences of the divorce are such as affect the property rights of the parties to the suit, the heirs or personal representatives may have such an interest in the litigation as that the cause will survive, *not for the purpose of continuing the controversy touching the right of divorce within itself*; but for the ascertainment of whether the property has been rightfully diverted from its appropriate channel of devolution." Craddock's Adm'r v. Craddock's Adm'r, 158 Va. 58, 65, 163 S.E. 387, 389 (1932) (emphasis added) (quoting Nickerson v. Nickerson, 48 P. 423, 423 (Or. 1898)). Thus, although the personal representatives of husband's estate are the successors in interest to husband with respect to any equitable distribution of marital property and support issues, those matters have been bifurcated and are not part of this case and the estate has no proper role or interest in the divorce litigation itself. However, because we remand this case to the circuit court with regard to the issue of appellate attorney's fees and costs and husband's estate has an interest in that proceeding, we grant wife's "Motion to Substitute Parties."

Court of the City of Norfolk (the "circuit court"). Therein, the circuit court granted husband's cross-complaint for divorce on the grounds of a one-year separation pursuant to Code § 20-91(A)(9)(a) and dismissed wife's complaint for divorce. Additionally, the circuit court bifurcated the divorce proceeding from the issues of spousal support, equitable distribution, and attorney's fees and costs after finding bifurcation to be "clearly necessary" and reserved those matters for future adjudication pursuant to Code § 20-107.3(A). On appeal, wife alleges two assignments of error: (1) that the circuit court erred in granting a decree of divorce without evidence that the parties, or one of them, intended to separate with the intent that the separation be permanent, and (2) that the circuit court erred and abused its discretion in bifurcating the cause. We also asked the parties to address the additional issue of whether this Court had subject matter jurisdiction to consider this appeal given the bifurcation of the divorce from the spousal support, equitable distribution, and attorney's fees and court costs matters not yet determined by the circuit court.

## I. BACKGROUND

On June 24, 1961, husband and wife married in Elizabeth City, North Carolina. On December 15, 2015, and after fifty-four years of marriage, the parties separated. The separation has remained continuous and uninterrupted since that date.

On February 12, 2016, wife filed a complaint for divorce ("complaint") on the grounds of cruelty and both actual and constructive desertion. In her complaint, wife alleged that she left the marital residence in December of 2015 and that "[n]o reconciliation appears or is likely probable." Further, wife alleged that husband was of "sound mind, *sui juris*." In addition to a divorce, wife's complaint sought equitable distribution of the marital property, attorney's fees, court costs, and temporary and permanent spousal support.

On March 11, 2016, husband filed an answer and cross-complaint seeking divorce ("cross-complaint") on the grounds of adultery and desertion. There, husband agreed that he was of sound mind and that "[t]here [was] no hope of reconciliation." Husband sought spousal support, "exclusive use and occupancy of the former marital domicile[,]" that wife "be required to return all assets and company interests that she obtained fraudulently to [husband,]" attorney's fees, court costs, and determination of the "ownership and value of all property pursuant to [Code] § 20-107.3[.]"

The circuit court heard a plethora of motions over the next year in what is best described as a contentious and protracted dispute between the parties. On July 13, 2017, husband filed a "Motion to Bifurcate Trial and for Entry of a Decree of Divorce" (the "motion to bifurcate") pursuant to Code § 20-107.3(A). Therein, husband asserted that he "formed an intent that the parties' separation be permanent on or about December 15, 2015." And, detailing his motivation for seeking bifurcation, husband then aged ninety, alleged that his "health . . . is such that he may not survive protracted litigation" and that the "conduct of [wife] seems calculated to purposefully and unreasonably delay this matter with the hope that [husband] not survive to see his divorce finalized so that [wife] will benefit financially."

On July 24, 2017, the circuit court held a hearing on husband's motion to bifurcate. At that hearing, counsel for husband proffered, and wife conceded, that husband was hospitalized for tests and treatment for what the subsequent hearing revealed was an apparent stroke, that he "feared his imminent death," and also had "borderline competency" issues.

Following unchallenged factual proffers by counsel for husband regarding husband's medical status, his counsel's expressed concerns regarding husband's competency, argument of counsel, and over wife's objection, the circuit court found that the "clearly necessary" statutory standard for doing so was met and granted "bifurcation of the divorce from the support, equitable

distribution, and attorney's fees matters."  Further, in its order granting bifurcation, the circuit court stated that it explicitly relied upon "the fact that [wife] did initiate the filing for divorce, that the [husband] is ninety and his health is declining and he has been receiving daily assistance since the start of this instant matter, and that there have been delays by the parties in this instant matter[.]"  The circuit court also recognized that husband may be "legally incompetent as of today," as conceded by husband's counsel, and that husband was hospitalized.  As a result, the circuit court also appointed a guardian *ad litem* for husband.

On July 31, 2017, the circuit court held a final divorce hearing.  There, the circuit court heard testimony from wife, Laura Goldstein who is the parties' youngest daughter, husband's guardian *ad litem*, and proffers from husband's counsel regarding the details of the parties' separation.  Notably, when the circuit court asked wife if "at least one [of the parties] intended to end the marriage" when the parties separated, wife responded, "[n]o."  And, when the circuit court stated "I assumed you are speaking for yourself[,]" wife cryptically responded, "I think he just wanted me to do something—change something, and I was—I was advised not to change it. It was with One Beach Corolla."[2]

Husband's guardian *ad litem* testified at the final divorce hearing that he believed that it was in husband's best interest to pursue a divorce.  He further testified that he met with husband in the hospital on two separate occasions where husband firmly expressed his desire to proceed with a divorce.  According to husband's guardian *ad litem*, husband wanted to settle his property, "make things equal," and take care of his daughters.  The guardian *ad litem* acknowledged that husband might have some competency issues but opined that husband understood

---

[2] Wife's answer referenced a potential piece of marital property located in North Carolina.  As indicated by the circuit court in its "Order Regarding Advancement of Sums for Attorney's Fees and Costs and Sale and Disbursement of Certain Marital Assets," husband and wife controlled "significant joint assets" with sporadic shareholder distributions, including a number of commercial and residential properties.

straightforward and simple questions and clearly expressed "what he wants to have done with his property" and also a "strong desire" to pursue the divorce expeditiously. Wife did not object to the guardian *ad litem*'s testimony and asked questions on cross-examination. When asked if husband indicated any interest in reconciling with wife on cross-examination, husband's guardian *ad litem* responded, "[n]o."

After the hearing, on the motion of husband and over the objection of wife, the circuit court granted husband's cross-complaint on the grounds of a one-year separation pursuant to Code § 20-91(A)(9)(a), entered a decree of divorce from the bond of matrimony, and dismissed wife's complaint. In doing so, the circuit court found "[t]hat the parties have lived separate and apart without any cohabitation and without interruption for more than one year, and there is no chance of reconciliation[.]" The circuit court also noted that "[t]his case is bifurcated as the Court has found that it is clearly necessary to divorce the parties and reserve certain issues" for future adjudication. Specifically, the circuit court expressly retained jurisdiction to determine spousal support, equitable distribution, and the allocation and reimbursement of attorney's fees and court costs.

Wife filed this appeal following the entry of the decree of divorce.

## II. ANALYSIS

### A. Whether the Decree of Divorce is an Appealable Final Order

Neither party initially raised the issue of whether the July 31, 2017 decree of divorce was an appealable order pursuant to Code § 17.1-405(3)(b). However, before hearing oral arguments on the merits of the appeal, this Court requested that the parties address this issue and they have done so.

"The Court of Appeals of Virginia is a court of limited jurisdiction." de Haan v. de Haan, 54 Va. App. 428, 436, 680 S.E.2d 297, 301 (2009) (quoting Canova Elec. Contracting, Inc. v.

LMI Ins. Co., 22 Va. App. 595, 599, 471 S.E.2d 827, 829 (1996)). "We possess subject matter jurisdiction over only those classes of cases specified by statute." Id. In relevant part, Code § 17.1-405 provides this Court with jurisdiction over "any *final* judgment, order, or decree of a circuit court involving . . . *divorce*; spousal or child support; [and] any interlocutory decree . . . entered in [such] cases . . . adjudicating the principles of a cause." Code § 17.1-405(3)(b), (d); (4) (emphasis added).

A final order or decree for the purposes of Rule 1:1 "is one which disposes of the whole subject, gives all the relief contemplated . . . and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." de Haan, 54 Va. App. at 436-37, 680 S.E.2d at 302 (quoting James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002)). Stated differently, an order that "retains jurisdiction to reconsider the judgment or to address other matters still pending" is ordinarily not a final order. Super Fresh Food Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002). "Thus, a 'decree which leaves anything in the cause to be done by the court is interlocutory,' rather than final, in nature." Prizzia v. Prizzia, 45 Va. App. 280, 285, 610 S.E.2d 326, 329 (2005) (quoting Dearing v. Walter, 175 Va. 555, 561, 9 S.E.2d 336, 338 (1940)). As in Prizzia, we have often applied this principle and concluded that we lack the authority to consider piecemeal appeals on issues of divorce, equitable distribution, and support except where this Court has been given the narrow statutory authority to consider an interlocutory appeal. See generally de Haan, 54 Va. App. at 439-42, 680 S.E.2d at 303-04.

The issue of our appellate jurisdiction in this case pivots on a question of statutory construction, namely, whether or to what extent the precedents embodied in Prizzia, de Haan, *et al.*, holding that we generally lack the jurisdiction to consider an appeal from an interlocutory

order, apply to an appeal of a decree of divorce that has been bifurcated from other matters reserved for future adjudication pursuant to Code § 20-107.3(A).

"Statutory interpretation is a question of law which we review *de novo*, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." Grafmuller v. Commonwealth, 57 Va. App. 58, 61, 698 S.E.2d 276, 278 (2010) (quoting Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009)). Further, "we should avoid interpretations that 'would negate the legislative intent and would require an unreasonably restrictive interpretation of the statute.'" Id. (quoting Ansell v. Commonwealth, 219 Va. 759, 763, 250 S.E.2d 760, 763 (1979)). "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." Belew v. Commonwealth, 62 Va. App. 55, 62, 741 S.E.2d 800, 803 (2013) (quoting Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).

In relevant part, Code § 20-107.3(A) specifically provides:

> Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce from the bond of matrimony, . . . the court, on the motion of either party, may retain jurisdiction in the *final decree of divorce* to adjudicate the remedy provided by this section when the court determines that such action is clearly necessary, and all decrees heretofore entered retaining such jurisdiction are validated.

(Emphasis added).

A plain reading of this statute makes clear that, upon motion and when it is "clearly necessary" to do so, the General Assembly intended to provide a circuit court with the discretion to effectively finalize the issue of divorce from the bond of matrimony independent of other ancillary issues, such as equitable distribution and support, and adjudicate them separately—effectively transforming one case into two. Upon the proper exercise of such discretion, the

order granting the divorce becomes final twenty-one days after entry pursuant to Rule 1:1. See Rule 1:1.

We reach this conclusion by parsing the language of Code § 20-107.3(A). The use of the phrase "final decree of divorce" by the General Assembly to reference a circuit court order reserving jurisdiction to adjudicate equitable matters at some future date, clearly suggests that, following bifurcation of the divorce from the remaining matters, the circuit court loses jurisdiction over the divorce decree twenty-one days from the entry of the order. In such a case, Code § 17.1-405 clearly permits an appeal to this Court from such a final order of divorce. And, while our jurisprudence is also clear that the mere fact that an order labeled as "final" is not dispositive of its finality, the plain, obvious, and rational meaning of the statutory language "final decree of divorce" clearly suggests a statutory classification of finality for the purposes of appeal.

Therefore, we hold that a court order properly bifurcating a divorce proceeding pursuant to Code § 20-107.3(A), which grants a divorce from the bond of matrimony but explicitly reserves other matters for future adjudication, is a final order with respect to the divorce issue, thereby falling within this Court's appellate jurisdiction twenty-one days after its entry. However, the statute also contemplates that following such bifurcation, the circuit court retains jurisdiction over all other remaining matters explicitly reserved for future adjudication.

We emphasize that bifurcating a divorce proceeding in this manner is not a matter of right nor should it be a common practice, but rather an exercise of a trial court's discretion in an irregular situation. It is proper to do so only upon motion of a party and when "clearly necessary" to achieve equity. See Christensen v. Christensen, 26 Va. App. 651, 654-55, 496 S.E.2d 132, 133-34 (1998) (explaining the evolution of Code § 20-107.3(A)). Otherwise, "Code

- 8 -

§ 20-107.3 compels [a] trial court to decide the divorce and property issues contemporaneously." Patel v. Patel, 33 Va. App. 776, 782, 537 S.E.2d 11, 14 (2000).

### B. Whether Bifurcation in this Case was an Abuse of Discretion

Wife argues that the circuit court erred and abused its discretion in bifurcating the cause by granting the July 31, 2017 decree of divorce and reserving the issues of equitable distribution, costs, and counsel fees. Although considerably muddled, wife's argument seems to be that because alternative inferences could be drawn from the record and in the absence of witness testimony at an evidentiary hearing, the circuit court could not properly determine that bifurcation was "clearly necessary."

Code § 20-107.3(A) provides a trial court, upon motion of either party, with the authority to retain jurisdiction in the final decree of divorce to adjudicate equitable distribution, costs, and counsel fees "*when the court determines* that such action is clearly necessary[.]" See Code § 20-107.3(A) (emphasis added). The statute, however, does not define "clearly necessary."

Because Code § 20-107.3(A) vests a trial court with discretionary power to bifurcate the divorce and property issues, its judgment will not be reversed on appeal unless it is plainly wrong or unsupported by the evidence. See Christensen, 26 Va. App. at 655, 496 S.E.2d at 134 (noting that, pursuant to Code § 20-107.3, "the trial court must make a specific finding of clear necessity for granting the divorce while retaining jurisdiction to decide equitable distribution issues"). A circuit court abuses its discretion when the record discloses that the court acted arbitrarily rather than with due regard to conscientious judgment. See Slayton v. Commonwealth, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946). Stated another way, "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Wright v. Wright, 61 Va. App. 432, 463-64, 737 S.E.2d 519, 534 (2013) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)).

On July 24, 2017, the circuit court held a hearing on husband's motion to bifurcate. Thereafter, the circuit court found that bifurcation was "clearly necessary" both on the record and in its order granting bifurcation. The circuit court repeated the same finding in its July 31, 2017 decree of divorce. While it is true that no witnesses testified at the hearing on July 24, 2017, in its order granting bifurcation, the circuit court relied upon the uncontested pleadings, factual concessions by counsel for wife, and unchallenged proffers by counsel for husband. Specifically, the circuit court noted "the fact that the [wife] did initiate the filing for divorce, that the [husband] is ninety and his health is declining and he has been receiving daily assistance since the start of this instant matter, and that there have been delays by the parties in this instant matter[.]" And, while wife argues that bifurcation was not "clearly necessary" because husband was only hospitalized for tests at the time of the bifurcation hearing, that was clearly not the only factor upon which the circuit court relied. Moreover, husband did, in fact, suffer a stroke and pass away soon after entry of the decree of divorce.[3]

The circuit court made an express finding that bifurcation was "clearly necessary" and referenced the specific factors noted above, both on the record and in its order, in support of its judgment that the divorce should be granted expeditiously, rather than delaying that matter further pending adjudication of the ancillary issues raised in the complaints. Because the record in the light most favorable to husband, as the party that prevailed below, supports the circuit court's judgment that bifurcation was "clearly necessary," we conclude that the circuit court did

---

[3] Although counsel for husband suggested at oral argument that this record provides an example of exactly what the General Assembly had in mind when it adopted Code § 20-107.3(A), the parties have not briefed and we do not decide whether alone or in combination, advanced age, hospitalization, the fear of imminent death, or competency issues by a spouse provides justification as a matter of law for bifurcation under Code § 20-107.3(A). Rather, we emphasize that the statute's "clearly necessary" requirement, in effect, provides our standard of review of the exercise of the circuit court's discretion in these cases.

not abuse its discretion in granting the motion to bifurcate the divorce matter from the remaining issues.

## C. Procedural Default of the Remaining Assignment of Error

Pursuant to Code § 20-91(A)(9)(a), a divorce may be granted "on the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year." This statute requires "proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period." Hooker v. Hooker, 215 Va. 415, 417, 211 S.E.2d 34, 36 (1975).

Determination of whether one or both of the parties formed the intent to remain permanently separate and apart is a question to be determined by the trial court as the fact finder. See Andrews v. Creacey, 56 Va. App. 606, 619, 696 S.E.2d 218, 224 (2010). "We give great deference to the trial court's factual findings and view the facts in the light most favorable to the prevailing party below[.]" Blackson v. Blackson, 40 Va. App. 507, 517, 579 S.E.2d 704, 709 (2003). A factual determination cannot be reversed on appeal unless it is "plainly wrong or without evidence to support it." Congdon v. Congdon, 40 Va. App. 255, 261, 578 S.E.2d 833, 836 (2003) (quoting Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992)).

In her remaining assignment of error, wife argues that the circuit court erred in granting a decree of divorce without evidence that the parties, or one of them, intended to separate with the intent that the separation be permanent. In response, husband argues that wife failed to raise this argument in the circuit court by making a contemporaneous objection to the sufficiency of the evidence and corroboration regarding the parties' intent that the separation be permanent. Therefore, husband contends that appellate consideration of this assignment of error is procedurally barred.

- 11 -

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." The purpose of Rule 5A:18 is "to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002). Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, wife does not argue that we should invoke these exceptions. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). We will not consider such an argument *sua sponte*. See Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004).

There is very little discussion in the record of the issue of intent to separate permanently. At the July 24, 2017 bifurcation hearing, wife's counsel proffered that he "will have conflicting evidence as to whether or not these people intended for this separation to be permanent" and that "husband did not want to die alone." But, the circuit court subsequently noted to wife's counsel that the requisite intent to permanently separate was only required at the time of separation. As stated by the circuit court, "[t]here's no requirement for on-going intent." Other than this exchange, however, the issue of intent did not re-surface during the bifurcation hearing, and wife never presented any evidence that husband abandoned his desire for a divorce.

During the subsequent final divorce hearing on July 31, 2017, the issue of the parties' intent appears in the record at several points, but not in a manner preserving the issue for appeal, given the requirements of Rule 5A:18 that to be cognizable, an objection must be both specific and timely. See Rule 5A:18. Specifically, in his opening remarks and before any testimony or other evidence was admitted, wife's counsel stated that he had "an objection on whether or not

- 12 -

[husband] has changed his mind. I would have some evidence." Also, during wife's testimony, the circuit court asked wife if "at least one [of the parties] intended to end the marriage" when the parties separated, to which wife responded "[n]o." Husband's guardian *ad litem*, however, testified that husband "reiterated again very strongly that he would like to have the divorce." Wife did not object to the guardian *ad litem*'s testimony and had the opportunity for cross-examination. Furthermore, when wife's counsel asked husband's guardian *ad litem* if husband indicated any interest in reconciling with wife on cross-examination, husband's guardian *ad litem* responded, "[n]o."

At the conclusion of husband's evidence at the final divorce hearing, wife failed to object to the sufficiency of the evidence regarding the intent of the parties to separate and that the separation be permanent. Moreover, wife did not present any evidence about husband's purported intent to reconcile as indicated by wife's counsel in his opening remarks. Wife did not make a motion to strike the evidence and did not object at any point during or immediately after the circuit court rendered its decision. Further, wife failed to make any written objections to the July 31, 2017 decree of divorce, nor did wife file any post-hearing motions for relief. In short, wife argues for the first time on appeal that the circuit court erred in granting the decree of divorce without evidence that the parties, or one of them, intended to separate with the intent that the separation be permanent. Accordingly, Rule 5A:18 bars this Court's consideration of this assignment of error.

### D. Attorney's Fees and Costs on Appeal

In his conclusion and request for relief, husband argues that he is entitled to attorney's fees and costs for efforts expended in defending a frivolous appeal.

The decision of whether to award attorney's fees and costs incurred on appeal is discretionary. See Rule 5A:30(b); see also Allen v. Allen, 66 Va. App. 586, 603, 789 S.E.2d

- 13 -

787, 795 (2016). More specifically, this Court's decisions regarding attorney's fees and costs are based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as "all the equities of the case." Rule 5A:30(b)(3)-(4); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In domestic relations cases, we award appellate attorney's fees when the arguments on appeal are "not fairly debatable under any reasonable construction of the record or the governing legal principles." Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008).

As previously explained, one of wife's assignments of error was procedurally defaulted. Additionally, wife does not prevail on the merits of her other assignment of error because the circuit court did not abuse its discretion in bifurcating the cause and the record is not fairly debatable in its support for that judgment. Therefore, we conclude that husband is entitled to a reasonable amount of attorney's fees and costs incurred in connection with this appeal and remand this case to the circuit court to determine that amount.

### III. CONCLUSION

For the reasons stated above, we conclude that we have jurisdiction to consider this appeal and affirm the circuit court's decision to grant husband's complaint for divorce from the bond of matrimony on the grounds of a one-year separation, as well as its decision to bifurcate the divorce proceeding from the issues of spousal support, equitable distribution, and attorney's fees and costs. We remand this case to the circuit court solely for determination and award of the appropriate amount of appellate attorney's fees and costs.

Affirmed and remanded.