UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Athey and Senior Judge Clements


STEVE ERNEST WADE, JR.

                                                        MEMORANDUM OPINION*
v.        Record No. 0183-20-3                              PER CURIAM
                                                         OCTOBER 27, 2020
AMHERST COUNTY DEPARTMENT
  OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF AMHERST COUNTY
                         Michael T. Garrett, Judge

            (Brady S. Nicks, on brief), for appellant.

            (Michael J. Brickhill; David P. Mitchel; James A. Downey, Jr.,
            Guardian *ad litem* for B.W.; Shannon L. Jones, Guardian *ad litem* for
            L.W.; Michael J. Brickhill, P.C., on brief), for appellee.


        Steve Ernest Wade, Jr. (father) appeals the circuit court's orders terminating his parental

rights to B.W. and L.W. and approving the foster care goal of adoption. Father argues that the

circuit court abused its discretion by finding that the Amherst County Department of Social Services

(the Department) satisfactorily investigated relative placement options. Father also asserts that the

circuit court erred in concluding that placement with the paternal aunt was not appropriate. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Jennifer Wade (mother) are the biological parents to B.W. and L.W., who are the subject of this appeal.[2]  The Department had been involved with the family since 2010 and had offered them counseling and intensive in-home services.  In 2017, the Amherst County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that L.W. was a child in need of supervision.  On February 7, 2018, the JDR court removed thirteen-year-old L.W. from his parents' care because of L.W.'s chronic truancy and "poor school achievement."

In January 2018, father agreed to a safety plan that provided for four-year-old B.W. to live with the paternal grandfather.  On August 23, 2018, the Department placed B.W. in foster care because father had violated the safety plan.

Upon the children's placement in foster care, the Department asked father and mother for the names of any possible relative placements.  The Department conducted a search for relatives and mailed letters to them, but it received no responses.  At a family partnership meeting on

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court terminated mother's parental rights to B.W. and L.W.  Mother appealed the decision to this Court, which dismissed her appeal for failing to file an opening brief.  See J. Wade v. Amherst Cnty. Dep't of Soc. Servs., No. 2091-19-3 (Va. Ct. App. July 23, 2020).

March 1, 2018, father informed the Department that his sister (the paternal aunt) could be a possible placement. The Department called and left a message for the paternal aunt, as well as mailed her a letter. According to the Department, the paternal aunt had "shown little interest in caring for or participating in [L.W.'s] life."

After the failure of an overnight visit with B.W. and trial-home placement with L.W., the Department changed the foster care goals to adoption. Father again mentioned that the paternal aunt may want custody of B.W. and L.W. The Department scheduled a meeting with father and the paternal aunt, but the appointment was not kept.

On July 10, 2019, the JDR court approved the foster care goal of adoption. On August 30, 2019, the JDR court terminated father's parental rights. Father appealed the JDR court's rulings.

On November 14, 2019, the parties appeared before the circuit court. The Department presented evidence of its efforts to investigate possible relative placements.[3] The social worker explained that when the children entered foster care, the Department conducted a CLEAR search, which was "the tool that we use" to identify relatives, and based on that information, the Department mailed letters to those identified.[4] The Department did not receive any response from the letters mailed to possible relatives.

The social worker further testified that father had suggested the paternal aunt as a possible relative placement. When L.W. entered foster care, a social worker had spoken

---

[3] Several portions of the social worker's testimony about the Department's efforts to identify relatives were marked "inaudible" in the transcript. The Court's ability to review the evidence was hindered by an inadequate record. "On appeal, we presume the judgment of the trial court is correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the trial court has erred in the respect alleged by appellant." Bay v. Commonwealth, 60 Va. App. 520, 528 (2012).

[4] CLEAR is online investigation software operated by Thomson Reuters.

"directly" with the paternal aunt, who then "fell off and nothing ever came of that." Subsequently, the Department scheduled a meeting to meet with father and the paternal aunt, but "neither one of them came to that meeting."

At the conclusion of the Department's evidence, father moved to strike. Father acknowledged that the Department did not "have to go to the ends of the earth to have identified possible placements"; however, father had identified a relative, namely the paternal aunt. He further claimed that "the Department's efforts [to identify relatives] were inadequate due to that they were working, first of all, through contact information provided initially by the father, communicated through the father." The circuit court denied the motion to strike, and father presented his own evidence.

Father testified that the paternal aunt was "interested" in custody of the children.[5] Father admitted that the paternal aunt had had an appointment to meet with the Department, but the appointment was not kept or rescheduled. Father blamed the Department for not calling her back to reschedule the appointment. He acknowledged that the paternal aunt had not filed a petition for custody.

During closing arguments, father asserted that the paternal aunt did not have to file for custody to be considered as a potential placement. Father argued that the Department did not make "enough efforts" to determine whether she was an appropriate placement. The circuit court found that the Department had an appointment with the paternal aunt, but "it wasn't kept." The circuit court further found that the "burden is put back on [the Department]" and that there was testimony that the Department had sent letters to relatives. The circuit court concluded, "But at any rate, there is an obligation to come forward to present oneself to show that you're willing to have a permanent relationship and the means and the needs to protect the children.

_____

[5] The paternal aunt did not testify at the circuit court hearing.

And I can't find that in this case based on what I've heard." After hearing all the evidence and argument, the circuit court terminated father's parental rights and approved the foster care goal of adoption. This appeal followed.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father challenges the circuit court's ruling that there were no suitable relatives with whom the children could be placed. For the first time on appeal, father objects to the Department's use of a CLEAR search to identify the children's relatives. Father questions "what the CLEAR search is, how reliable it is, how or when information was inputted in to the database, which names were produced, who those recipients were believed to be, who ran the search, and whether such person was experienced or qualified in doing so." Father also asserts for the first time on appeal that there was "no evidence of the contents of any notice sent to relatives." He questions whether the Department's letters adequately notified the relatives of their options and the services available to them. He also alleges that the circuit court erred in ruling that the Department's efforts to investigate relative placements "comported with [his] 14th [A]mendment constitutional guarantees to substantive and procedural due process."

Father, however, did not object to the Department's evidence, and he had an opportunity to question the social worker about the Department's CLEAR search and the letters sent to possible relative placements. He did not argue to the circuit court that his due process rights were violated. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Tackett v. Arlington Cnty. Dep't of Human Servs., 62 Va. App. 296, 315 (2013) (quoting Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998)); see Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" Friedman v. Smith, 68 Va. App. 529, 544 (2018) (quoting Andrews v. Commonwealth, 37 Va. App. 479, 493 (2002)). Since father did not raise these arguments with the circuit court, we will not consider them.

Moreover, we find that the circuit court did not abuse its discretion in finding that there were no suitable relatives, including the paternal aunt, with whom the children could be placed. Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A); see also Pilenza v. Nelson Cnty. Dep't of Soc. Servs., 71 Va. App. 650, 654 (2020). "This Court has held that this provision obligates [the Department] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo, 68 Va. App. at 567 (quoting Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217 (2004)). Accord Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 136 (2000); Logan, 13 Va. App. at 131. "Although mandatory, this obligation is limited." Castillo, 68 Va. App. at 567. We have never "suggest[ed] that the Department has a duty in every case to investigate the home

of every relative of the children, however remote, as a potential placement." Sauer v. Franklin Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771 (1994).

Father conceded that the Department did "not have to search the ends of the Earth or undertake fruitless efforts to identify relatives suitable for placement." The Department presented evidence that it had asked the parents whether there were any possible relatives who could care for the children. The Department also conducted a CLEAR search to identify relatives. It sent letters to relatives, but it received no responses. Father told the Department that the paternal aunt might be interested in custody. The Department communicated directly with the paternal aunt and even scheduled an appointment with her. The social worker testified that communication with the paternal aunt "fell off" and the appointment was not kept. Contrary to father's arguments, the evidence supports the circuit court's conclusion that there were no relatives, including the paternal aunt, who were willing and suitable to care for the children. "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, Logan, 13 Va. App. at 128, it does not disturb the circuit court's ruling that no relatives were suitable placements," Castillo, 68 Va. App. at 568.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.