COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


CHRISTY LEE PAYNE

MEMORANDUM OPINION* BY
v.        Record No. 0747-21-2        JUDGE JAMES W. HALEY, JR.
JULY 19, 2022

PRINCE EDWARD COUNTY
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Donald C. Blessing, Judge

Tiffany K. Booker for appellant.

Kemper M. Beasley, III; M. Brooke Teefey, Guardian *ad litem* for
the minor children, for appellee.[1]


Christy Lee Payne (mother) appeals the circuit court's orders terminating her parental rights

and approving the foster care goal of adoption.  Mother argues that the circuit court erred "when it

did not explicitly find [her] parentally unfit."  She further contends that the circuit court erred

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On December 29, 2021, mother filed her opening brief.  The Department's brief was due by January 28, 2022.  *See* Rule 5A:19(b)(2).  On February 8, 2022, the Department moved for an extension of time to file its brief late and filed its brief on the same day.  We find that the Department's motion was filed late.  *See* Rule 5A:19(b)(4).  Accordingly, we deny the Department's motion.

"when it found that it was proven by clear and convincing evidence that termination was in the best interests of the children." We find no error and affirm the decision of the circuit court.[2]

BACKGROUND[3]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party.

Mother is the biological parent to twins, F.L. and G.L.[4] In February 2020, the Department became involved with the family after receiving a report alleging inadequate supervision. The "16-month old twins" were found "eating feces off of a toilet brush" in a shelter where the family was staying. During its investigation, the Department discovered that mother and the children "had been living transiently . . . all over the country" and had been involved with child protective services in "several counties in Virginia." When the Department confronted mother, she "barricaded herself" in a bathroom with the children. The police assisted

---

[2] Mother also challenges the circuit court's finding that she "had been unwilling or unable within a reasonable period of time not to exceed 12 months from the date of placement in foster care to remedy substantially the conditions which led to or required continuation of [her] children's placement in foster care." In addition, mother asserts that the circuit court erred in finding "the remedial services" provided by the Prince Edward County Department of Social Services (the Department) were "sufficient." Mother's arguments focus on the termination of parental rights under Code § 16.1-283(C)(2); however, the record reflects that the circuit court terminated mother's parental rights under Code § 16.1-283(B), not (C)(2). Therefore, we will not address these arguments.

[3] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[4] The children's biological father was unknown.

- 2 -

the Department by breaking the door and removing mother and the children. The Department was concerned about the children's safety and well-being in mother's care considering her mental health and instability, so it removed the children and placed them in foster care.

The JDR court adjudicated that the children were abused and neglected and entered a dispositional order. Mother appealed the JDR rulings to the circuit court, which also found that the children were abused and neglected.[5]

Upon the children's entry into foster care, the Department required mother to meet certain goals before reunification could be achieved. The Department required mother to complete a psychological evaluation and parenting classes, as well as to participate in therapy and parent coaching. The Department also required mother to maintain stable housing and employment. Furthermore, the Department directed mother to abstain from illegal drug use and participate in random drug screens.[6]

Mother met some of the Department's requirements, but not all. For example, mother participated in parenting classes, and she also completed the psychological evaluation. But she did not participate in the recommended services, including a psychiatric consultation, psychotherapy, and parent coaching. Instead, mother left Virginia in May 2020, and traveled to Texas and then to California, where her family lived. The Department attempted to connect mother with mental health, housing, and employment services, but mother remained "evasive" concerning her whereabouts, which limited the Department's ability to help her with services.

---

[5] Mother appealed the circuit court's ruling to this Court; we summarily affirmed the circuit court's finding of abuse and neglect. *See Payne v. Prince Edward Cnty. Dep't of Soc. Servs.*, No. 0839-20-2 (Va. Ct. App. Jan. 26, 2021).

[6] In 2020, mother tested negative for illegal drugs during her psychological evaluation and while she was in California.

Mother continually struggled with stable housing and employment. The Department initially advised mother that funds were available to help her with a rent deposit and "possibly first or second month's rent" for housing in Virginia. Mother declined the assistance. When she moved out-of-state, she failed to maintain adequate housing, and lived in shelters in the Los Angeles area. Mother's employment situation also was unstable. Mother had a job while she lived in Virginia. Although she told the Department that she was working in California, mother did not provide pay stubs, which prevented the Department from verifying her income or hours. The Department was unable to confirm that mother held any job for more than three months.

The Department also provided mother with weekly virtual visits.[7] Considering the children's young ages and limited attention spans, however, the visits lasted approximately fifteen to thirty minutes. In July 2020, the Department advised mother that she could visit the children in person, but because mother had moved out-of-state, she was unable to do so. In March 2021, mother advised the Department that she would travel to Virginia to visit the children. The Department informed her that funds were "not available" to assist with the cost of visitations. Mother "showed up without a plan in place" for transportation or a hotel. Nonetheless, the Department arranged for mother to visit the children twice in Richmond, where she was staying.

Although mother had visited the children, she had not participated in parent coaching services. Mother found a parenting coach who would meet with her virtually. Notwithstanding mother's requests for financial assistance for the services, the Family Assessment and Planning Team (FAPT) denied funding twice, "given her current circumstances."

_____

[7] COVID-19 restrictions initially limited the visitations to virtual visits; however, once mother moved out-of-state, the virtual visits were the only practical way for mother to engage with her children.

The Department recommended terminating mother's parental rights because she failed to complete the required services. The Department investigated the maternal grandparents, who lived out-of-state, as a possible relative placement. The Department requested a home study through the Interstate Compact on the Placement for Children (ICPC). Accordingly, the Department proposed a foster care goal of relative placement with a concurrent goal of adoption.

On November 18, 2020, the JDR court approved the foster care goal of relative placement. On May 12, 2021, the JDR court terminated mother's parental rights.[8] Mother appealed the JDR court's rulings.

On July 8, 2021, the parties appeared before the circuit court. The Department presented evidence that mother still had not complied with its requirements for reunification. The Department had requested verification from mother that she had participated in services in California. Mother indicated that she had seen a psychiatrist, who prescribed her medication, but mother did not provide any verification to the Department. Mother also failed to provide any verification of ongoing therapy or mental health treatment.

The Department explained that one of its requirements was for mother to demonstrate stable housing for at least six months; however, mother had not been "forthcoming with information" to demonstrate stable housing. At the time of the circuit court hearing, mother was living in a homeless shelter in California. The Department stressed that a stable and permanent home was "of the utmost importance for [the children's] future success and stability, well-being."

The Department advocated for a primary foster care goal of relative placement and a concurrent foster care goal of adoption. It explained that the termination of mother's parental rights would not impact its ability to place the children with a relative. The Department had

_____

[8] The JDR court also terminated the unknown father's parental rights.

received the ICPC report concerning the maternal grandparents, but that placement was denied because mother's half-sibling, who was over the age of eighteen and lived in the home, refused to participate in the process. The Department was still reviewing options with the maternal grandparents.

The Department also presented evidence about the children and their well-being. The foster mother testified that the children had been living with her and her husband since February 2020. The foster mother described the children as "really healthy," although G.L.'s fine and gross motor skills were delayed. As a result, G.L. participated in occupational therapy. Both children also received speech and language services.

At the conclusion of the Department's evidence, mother testified about her efforts and current situation. Mother explained that she left Virginia and returned to California because it offered her "more services." She testified that she had been receiving mental health treatment in California since October 2020. Mother presented a letter from her current psychologist, who reported that mother was "in treatment for Major Depressive Disorder and for Post-traumatic Stress Disorder." Mother reported that she consistently took her prescribed medication.

Mother also testified that she had been employed with Walmart in Virginia, Texas, and California, but admitted that she had not been "consistently employed at a Walmart for a six-month period." Mother provided the circuit court with copies of her 2020 W-2's and paystubs. She also stated that she had applied for disability "based on [her] severe symptoms of PTSD." Mother's claim for disability was denied, but she was appealing the decision.

Mother admitted to living in "an adult program" at a shelter in California. The facility could not accommodate children, but there was a shelter across the street that accepted children. Mother also testified that she had been "matched with housing" and expected to "be going into housing very soon."

Mother confirmed that she had participated in weekly thirty-minute video visits with her children. Mother agreed that the video visits were not ideal. She had flown from California to Virginia in December 2020 and visited with the children in person twice.

After hearing the parties' arguments and reviewing this Court's opinion in *Payne v. Prince Edward Cnty. Dep't of Soc. Servs.*, No. 0839-20-2 (Va. Ct. App. Jan. 26, 2021), the circuit court found that mother had a history of instability. The circuit court considered that mother had participated in a mental health evaluation and that the "doctor expressed concern over mother's ability to take care of the children." In fact, mother did not follow up with the doctors and did not engage in "extensive mental health treatment." The circuit court also considered that after the children entered foster care, mother left Virginia. The circuit court found that mother "absented herself from the children" and was "not financially stable." The circuit court further found that mother did not have a "stable home in which she could bring the children." Considering the totality of the evidence, the circuit court found that mother had "not established substantial progress in such a fashion that allow[ed] her to go forward." The circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

A. Parental fitness

Mother argues that the circuit court erred when it terminated her parental rights because "there was no finding of parental unfitness." Mother raises this argument for the first time on appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Tackett v.*

*Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v.*

*Commonwealth*, 26 Va. App. 299, 308 (1998)).

> Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity: "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it."

*Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58

Va. App. 351, 356 (2011)). "If a party fails to timely and specifically object, [s]he waives [her]

argument on appeal." *Jacks v. Commonwealth*, 73 Va. App. 473, 479 (2021). "The purpose of

Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to

intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary

appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v.*

*Commonwealth*, 37 Va. App. 479, 493 (2002)).

Moreover, the Supreme Court of Virginia previously has found that for termination of

parental rights, "a finding that the § 16.1-283 factors exist . . . is tantamount to a finding of

parental unfitness." *Knox v. Lynchburg Div. of Soc. Servs.*, 223 Va. 213, 223 (1982). "Once the

court finds these factors are present, it need not make a further finding of parental unfitness." *Id.*

at 220; *see also Kilby v. Culpeper Cnty. Dep't of Soc. Servs.*, 55 Va. App. 106, 115 (2009)

(same). As discussed herein, the circuit court found that there was clear and convincing

evidence to support a termination of parental rights under Code § 16.1-283(B), based on the

previous finding of abuse and neglect, mother's lack of "substantial progress," and the

unlikelihood of future progress. Once the circuit court found that the statutory factors had been

met, it was not required to make a separate finding of parental unfitness. *Id.*

B.  Termination of parental rights

Mother argues that the circuit court erred in terminating her parental rights and finding that the termination was in the children's best interests.  "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B), which states that a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems."  *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 270-71 (2005) (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562-63 (2003)).

This Court previously affirmed the circuit court's finding that mother had abused or neglected her children. *See Payne*, No. 0839-20-2. After hearing the evidence and argument at the termination of parental rights hearing, the circuit court found that mother had not substantially remedied the underlying problems and it was unlikely she would be in a position to do so. The circuit court emphasized that after the children entered foster care, mother left Virginia and "absented herself from the children." The circuit court found that mother had not "avail[ed] herself to services for parenting and housing," although the Department had offered them. While mother participated in "some video visits," the circuit court doubted whether they were "productive," considering the children's young ages. The circuit court further found that mother was "not financially stable" and did not have a "stable home in which she could bring the children." The circuit court remained concerned that mother had not addressed her mental health. The circuit court acknowledged that mother testified and offered limited documentation regarding her efforts at counseling and medication. The circuit court found, however, that mother's documentation lacked any explanation for how the services she had received "put her in a better position where she [could] continually improve and [had] obtained some substantial improvement up to this point to care for these children." After finding that mother had not addressed her mental health, financial stability, and housing, the circuit court concluded that she had "not established substantial progress" and there was "no assurance or probability" that she could do so in the future.

At the time of the circuit court hearing, the children were two and a half years old and had been in foster care for approximately seventeen months. But mother remained unable to assume custody of the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (quoting *Kaywood v. Halifax Cnty.*

- 10 -

*Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).  Considering the totality of the record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B) and finding that the termination was in the children's best interests.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*