# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Ortiz, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia


DIOMEDES ALFONSO GONZALEZ, ET AL.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2002-23-4                      JUDGE DANIEL E. ORTIZ
                                                    SEPTEMBER 9, 2025

ROBERTO SENZANO SARMIENTO


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Warner F. Young (Stephen D. Halfhill; Mahdavi, Bacon, Halfhill &
Young, PLLC, on brief), for appellants.

Ronald C. McCormack (Ronald C. McCormack, PC, on brief), for
appellee.


        In 2019, the Fairfax County Circuit Court entered a final order of divorce for Roberto

Senzano Sarmiento and Sharon Gonzales.  The order incorporated a settlement agreement

handwritten by the parties stating that all marital assets "ha[d] been equal[l]y distributed."  Then,

in 2020, Roberto brought the present action seeking to establish that his and Sharon's marital

home was held in constructive trust by her father, Diomedes Gonzalez, for the benefit of Roberto

and Sharon.  Following a bench trial, the circuit court ruled in favor of Roberto.  We find that,

because the circuit court's jurisdiction to adjudicate the distribution of marital property expired

21 days after the entry of the final order of divorce, it erred by failing to dismiss the present

action, and we vacate its judgment.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## BACKGROUND[1]

Roberto Sarmiento met Sharon Gonzales in 2005, and they married in 2007. In 2008, they purchased a one-story house in Springfield, Virginia using their joint savings. Because Roberto did not have his green card at the time, only Sharon applied for the loan and only her name was on the deed of trust.[2] The plan was to add Roberto's name to the title later.

Roberto and Sharon had been living up to that point with Diomedes Gonzalez, Sharon's father, and Diomedes continued to live with them in the basement of the new house. Diomedes had no role in purchasing the home, and he paid rent to Sharon and Roberto.

Over the years, Roberto made substantial improvements to the house either by doing the work himself or by facilitating the services of various contractors he knew. The work included: plumbing, electric, carpentry, cabinetry, painting, new insulation, and custom rafters, as well as outdoor improvements such as a new fence, driveway, and playground for their children. By the time the work was completed in 2019, the house went from one story to three stories with a finished basement. Sharon and Roberto both contributed financially to the costs of improvement, but it was Roberto alone who performed or facilitated the work.

At various points, Roberto and Sharon ran several businesses out of the house, including a daycare. In 2015, there was a tragic incident in which a baby who was under their care stopped breathing and eventually died. Fearful that they might be sued and eventually lose their home, Sharon and Roberto conveyed the house to Diomedes via a deed of gift.[3]

---

[1] We view the facts in the light most favorable to Roberto, the prevailing party below, and we defer to the circuit court's factual findings. *See Koons v. Crane*, 72 Va. App. 720, 732 (2021).

[2] Roberto got his green card in 2017.

[3] The deceased infant's parents did bring an action against Sharon and Roberto in 2017, but it was eventually dropped.

In 2019, Sharon and Roberto began having marital problems, and Sharon filed for divorce. Sharon left the house, but Roberto, Diomedes, and the couple's children remained. In June, Roberto and Sharon both signed a handwritten separation agreement stating in relevant part:

> We have come to a mutual agreement that all Meretal [sic] assets have been equaly [sic] distributed. We each have our own car and own money, When the comes to the childrens [sic] we are equaly [sic] splitting the time with them . . . .

On September 30, 2019, the circuit court entered a final order of divorce incorporating the handwritten agreement. The parties did not seek court-performed equitable distribution.

Diomedes continued to hold legal title to the house, and, in November 2019, Diomedes, via Sharon, who had power of attorney, filed a summons for unlawful detainer in Fairfax County General District Court against Roberto. He was evicted from the house shortly thereafter.

In April 2020, Roberto filed the present action, alleging that Diomedes held the house in constructive trust for the benefit of him and Sharon. The complaint named both Diomedes and Sharon as defendants. In both their answer and in a motion to dismiss, the Gonzalezes asserted that Roberto's claim was barred by res judicata under Rule 1:6(a) because he had "occasions and opportunities" to seek the remedy of constructive trust during the 2019 divorce proceedings. No order was ever entered on the motion to dismiss.

Roberto's claim went to trial. At the conclusion of Roberto's evidence, the Gonzalezes moved to strike. They argued first, as a factual matter, that there was "no allegation of fraud" and therefore that implementing a constructive trust would be inappropriate. Second, they asserted that, under Code § 20-111, the final order of divorce barred Roberto's present claim. The court took the motion to strike "under advisement" and proceeded with trial.

Following the presentation of the Gonzalezes' evidence, the court found for Roberto, determining that Diomedes "held in constructive trust for [Roberto] and [Sharon] the home in

- 3 -

question." The court found that, pursuant to Code § 20-111, Roberto and Sharon's beneficial interests in the house "converted to tenancy in common" following the divorce. Later, the court held a hearing to determine the value of and ownership interests in the property and determined that both Roberto and Sharon had 50% interests as tenants in common.

The Gonzalezes subsequently filed a "Trial Brief and Motion to Reconsider." In relevant part, they first asserted that the court lacked jurisdiction because Roberto's claim for constructive trust was akin to him seeking equitable distribution, and the court's jurisdiction to make such a determination had expired following the 2019 final order of divorce. Second, for the same reason, they argued that Roberto was approbating and reprobating by agreeing in 2019 that "all [marital] assets ha[d] been equal[l]y distributed" and now seeking a determination of constructive trust against Diomedes. And, third, they reasserted their argument that Roberto's claim was barred by res judicata and Rule 1:6.

The court denied the motion, and the Gonzalezes timely appealed.

ANALYSIS

On appeal, the Gonzalezes again raise their argument that Roberto's claim for constructive trust is fundamentally one seeking the equitable distribution of marital property. Thus, they argue, because more than 21 days had passed since entry of the 2019 final order of divorce, the court lacked subject matter jurisdiction to adjudicate Roberto's claim. We agree.[4]

Subject matter jurisdiction "is the authority granted through constitution or statute to adjudicate a class of cases or controversies." *Parrish v. Fannie Mae*, 292 Va. 44, 49 (2016)

---

[4] The Gonzalezes also reasserted their arguments that Robeto's claim is barred by the approbate and reprobate doctrine and res judicata. Because we agree that the court lacked jurisdiction to adjudicate the present claim, we need not examine their other assignments of error. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decided cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

(quoting *Morrison v. Bestler*, 239 Va. 166, 169 (1990)). It is a threshold question of law that we review de novo. *Id.* Rule 1:1 provides that a trial court's subject matter jurisdiction over a particular matter expires after 21 days from entry of a final judgment, order, or decree.[5] "[A] final decree of divorce is a final decree within the meaning of Rule 1:1." *Jackson v. Jackson*, 298 Va. 132, 140 (2019). Like any final order, "[a] party dissatisfied with [a divorce decree] must challenge it in the circuit court within 21 days of its entry or through a timely appeal" or forfeit his ability to do so. *Id.*

Equitable distribution is an "ancillary issue[]" in a suit for divorce. *Friedman v. Smith*, 68 Va. App. 529, 539 (2018). It "provide[s] a means to divide equitably the wealth accumulated during and by" a marital partnership "based on the monetary and non-monetary contributions of each spouse." *Robinson v. Robinson*, 46 Va. App. 652, 661 (2005) (quoting *von Raab v. von Raab*, 26 Va. App. 239, 245 (1997)). *See generally* Code § 20-107.3. A court's authority to equitably distribute marital assets during divorce proceedings is derived solely from Code § 20-107.3. *Toomey v. Toomey*, 251 Va. 168, 170 (1996). "[W]hen jurisdiction is vested in a court by statute, that jurisdiction is limited by the terms of the statute." *Id.*

Code § 20-107.3(A) provides the relevant limitations here:

> Upon . . . decreeing a divorce from the bond of matrimony . . . the court, upon request of either party, (i) shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property . . . . The court, on the motion of either party, may retain jurisdiction in the final decree of divorce to adjudicate the remedy provided by

---

[5] Specifically, Rule 1:1(a) states that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." An order is final "if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree." Rule 1:1(b).

this section when the court determines that such action is clearly necessary . . . .

*See Toomey*, 251 Va. at 170. Put differently, § 20-107.3(A) allows a court to "bifurcat[e] a divorce proceeding" by "grant[ing] a divorce from the bond of matrimony but explicitly reserv[ing] other matters for future adjudication." *Brown v. Brown*, 69 Va. App. 462, 470 (2018) (quoting *Friedman*, 68 Va. App. at 540). But this positive grant of authority, by negative implication, also limits the court's power. If the circuit court "d[oes] not retain jurisdiction in the divorce decree to adjudicate equitable distribution" in the manner prescribed in subsection (A), its authority to do so expires with the conclusion of the 21-day period following entry of the divorce decree. *Toomey*, 251 Va. at 171.

In the present action, Roberto seeks to establish that he and Sharon are beneficial owners of their marital home held in constructive trust by Diomedes.[6] The question is whether the circuit court's jurisdiction to consider this claim expired after 21 days from entry of the 2019 divorce order. We find that it did.

Although Roberto styled the present claim as a separate action for constructive trust, his prayer for relief fundamentally asked the court to reopen divorce proceedings and "adjudicate the remedy provided by [Code § 20-107.3]." Code § 20-107.3(A). In his complaint, Roberto alleged that: although Sharon's was the only name originally on the title, "it was always understood and agreed between them that . . . *each* owned an undivided one-half interest in the . . . [p]roperty"; "[t]he original mortgage . . . was paid off with funds from [Roberto] *and* [Sharon]"; after the conveyance to Diomedes, "all costs of maintenance, upkeep and additional improvements . . .

---

[6] A constructive trust is a judicially imposed equitable remedy. *See Falls Church v. Protestant Episcopal Church in the U.S.*, 285 Va. 651, 668 (2013) ("[C]onstructive trusts 'will not arise until explicitly created by a court.'" (quoting 3 David A. Thomas, *Thompson on Real Property* § 27.04(g)(1)(i) (2d ed. 2001))). It arises "not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained, at least for the acquirer's own benefit." *Faulknier v. Shafer*, 264 Va. 210, 215 (2002).

w[ere] paid out of funds from [Roberto] *and* [Sharon]"; and Diomedes "was aware" that Roberto and Sharon were "*both* owners" of the house and that, after the conveyance, they remained the "true beneficial owners." (Emphases added). Consistent with these allegations, Roberto prayed for a determination that Diomedes held title to the house "as trustee, subject to a constructive trust for the benefit of [Roberto] *and* [Sharon]," giving Roberto a "one-half interest." (Emphasis added). Ultimately, he asked the court to "order the sale" of the house and "distribute the proceeds *equally* between [Roberto] and [Sharon]." (Emphasis added).

Comparing the language of Code § 20-107.3 to the foregoing, it is apparent that Roberto sought the "process" of equitable distribution. *Sobol v. Sobol*, 74 Va. App. 252, 273 (2022). Roberto asked the court to determine "the ownership . . . of all [real] property" between him and Sharon, its "value," and whether "such property . . . [wa]s marital," thereby allowing him to claim a one-half beneficial interest. Code § 20-107.3(A). Based on those "equities and . . . interests in the marital property," Roberto sought a de facto "monetary award" or distribution equal to one-half of the house's value. Code § 20-107.3(D). Thus, although styled as a separate action against a third-party, at bottom, Roberto's claim was one seeking equitable distribution of his and Sharon's marital home.

To be sure, during the 2019 divorce proceedings, the court did not specifically determine the ownership interests in the house because the parties did not request equitable distribution—indeed, they explicitly agreed that "all [marital] assets ha[d]" already "been equal[l]y distributed." But we reiterate, if the court "d[oes] not retain jurisdiction in the divorce decree to adjudicate equitable distribution," its authority to do so expires with the conclusion of the 21-day period following entry of the divorce decree. *Toomey*, 251 Va. at 171. It is undisputed both that the court did not retain jurisdiction and that Roberto failed to "challenge [the 2019 divorce order] in the circuit court within 21 days of its entry." *Jackson*, 298 Va. at 140. Accordingly, because the

present action sought the equitable distribution of marital property, and because the court's jurisdiction to do so had expired, the court erred by failing to dismiss Roberto's claim, and we vacate its judgment.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is vacated.

*Vacated.*