# COURT OF APPEALS OF VIRGINIA

**Record No. 0107-25-1**

MARK D. GUERRETTAZ

v.

KELLY GUERRETTAZ

Present: Judges Malveaux, Friedman and Lorish

Opinion Issued June 2, 2026[*]

**FROM THE CIRCUIT COURT OF YORK COUNTY**
Richard H. Rizk, Judge

(Mark D. Guerrettaz, on briefs), *pro se*. Appellant submitting on briefs.

(Breckenridge Ingles; Brian W. Decker, Guardian ad litem for the minor children; Martin, Ingles & Hensley, Ltd.; Decker Law, PLLC, on brief), for appellee. Appellee submitting on brief.

**MEMORANDUM OPINION BY**
**JUDGE LISA M. LORISH**

Mark Guerrettaz (Father) appeals the York County Circuit Court's December 13, 2024 order awarding Kelly Guerrettaz (Mother) sole custody of their three children and resolving matters of equitable distribution and child support. He challenges the constitutionality of Virginia's custody statutes, the trial court's evidentiary and procedural decisions at trial, and its refusal to reconsider equitable distribution or child support. The parties waived argument in this case. Code § 17.1-403(ii); Rule 5A:28(e). We affirm the constitutionality of the statutory framework and conclude that the trial court did not abuse its discretion.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Father's pending motions to strike are denied.

BACKGROUND

We review the evidence below in the light most favorable to Mother, the prevailing party in the trial court, and afford her "all reasonable inferences fairly deducible" from that evidence. *See Bedell v. Price*, 70 Va. App. 497, 500-01 (2019) ("On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" (quoting *Bristol Dep't of Soc. Servs. v. Welch*, 64 Va. App. 34, 40 (2014))).

Father and Mother married in 2008 in Illinois and later moved to Virginia. Together, they had three children—ages one, six, and nine when Mother and Father separated after nine years of marriage.

In December 2017, Mother filed for divorce and requested custody, child support, and equitable distribution of their marital assets. Father counterclaimed for custody and child support. In October 2018, the circuit court entered an order classifying and distributing some, but not all, of the couple's assets. In April 2019, the court entered a divorce decree resolving the grounds for divorce and making additional equitable distribution determinations but continuing the matter to address child custody and support.

After a hearing, the circuit court entered an order granting Mother sole legal custody of the children with supervised visitation for Father and calculating Father's child support obligation at $1,159 per month. That order continued the matter of Father's visitation for "review." The court entered additional orders concerning the visitation schedule in 2019, 2020, and 2021, eventually allowing Father unsupervised visitation.

After Father reportedly "took the next 2+ years off to get his own life in order and to study up on the law so he could better represent himself," he moved to reconsider the earlier child support

and custody determinations.[2] He argued that he need not demonstrate a material change in circumstances because the earlier child support and custody determination was a pendente lite order, not a final judgment. He also requested that his child support obligation be reduced based on his "100% disab[ility]" rating due to posttraumatic stress disorder by the Department of Veterans Affairs ("the VA"). Father sought primary physical custody and shared legal custody or at least equal visitation time. He also moved to dismiss the children's guardian ad litem but later withdrew that motion. Finally, he asked the court to order Mother to refinance and remove him from the mortgage on the marital home and sought equitable distribution of another marital property located in Illinois.[3] Mother moved for attorney fees.

The court held hearings on Father's motion to reconsider custody and parenting time. After hearing each party's evidence, considering the guardian ad litem's recommendations, and interviewing the older two children in camera, the court modified the couple's custody order to permit Father more visitation time while keeping Mother as the sole legal and physical custodian. At a hearing the next month, Father objected to the court's draft order as incorrectly modifying custody because he had argued that "this is a case of original determination." The court adjusted the opening of the order to read: "Came on this 28th day of October, 2024, this matter to be heard for the Court to announce its ruling as to a final determination of custody and parenting time." Father requested another day to enter objections, and the court denied the request, saying, "I'm entering the

[2] During part of this time period, Father was incarcerated for his prior assault and battery of Mother.

[3] In a pretrial order issued in September 2018, the circuit court instructed that the Illinois property be listed for sale and sold "as soon as the parties have sufficient equity to pay the debt associated with the purchase of the property." Three months before Father's motion for equitable distribution of the property, Mother filed a petition in Illinois to enroll foreign judgment to ensure that the equitable distribution lien against Father (over $50,000) attached to the property.

order today. We are not going to waste any more time. . . . I expected this to be resolved prior to today."

The court then entered a written, final order with the same modifications—granting Father more visitation but retaining Mother's sole legal custody and Father's $1,159 child support obligation. The court also found Father in contempt for failure to pay over $19,000 in child support and over $50,000 in equitable distribution. Thus, the court ordered that, once Mother sold the Illinois property (as she had previously agreed to do), Father's interest in the property would go towards satisfying these unpaid obligations. As for Father's motions to refinance the marital home and equitably distribute the Illinois property, the court held that it lacked jurisdiction under Rule 1:1 to adjudicate the matters. By final order entered on December 13, 2024, the circuit court denied Father's motions for equitable distribution and awarded Mother $30,000 in attorney fees.

ANALYSIS

Father now appeals. He argues that Virginia's custody statutes, found in Chapter 6.1 of Title 20 (Code §§ 20-124.1 to -124.6), unconstitutionally infringe on the rights of parents and children. He also challenges the circuit court's procedural rulings below and argues that the court should have reopened child support and equitable distribution. We address—and reject—each argument in turn.

I. Chapter 6.1 is constitutional as applied to Father, and he cannot raise a constitutional claim for his children.

Father contends that Virginia's best-interests-of-the-child test, contained in portions of Chapter 6.1, unconstitutionally infringes on the fundamental rights of parents and, by extension, their children. Father did not make this argument until after the circuit court entered its final order; instead, he repeatedly cited Code § 20-124.3 as support for his argument that he be awarded primary custody. *See Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) ("To satisfy [Rule 5A:18], 'an objection must be made . . . at a point in the proceeding when the trial

- 4 -

court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.'" (second alteration in original) (quoting *Johnson v. Raviotta*, 264 Va. 27, 33 (2002))). Assuming without deciding that Father preserved this claim, we readily reaffirm the constitutionality of Chapter 6.1.

"Before a litigant can mount a successful facial challenge to a statute, that litigant must first show 'that the statute in question is unconstitutional as applied to him.'" *Shin v. Commonwealth*, 294 Va. 517, 526 (2017) (quoting *Toghill v. Commonwealth*, 289 Va. 220, 228 (2015)). "We review arguments regarding the constitutionality of a statute *de novo*." *Yap v. Commonwealth*, 49 Va. App. 622, 629 (2007) (citing *Shivaee v. Commonwealth*, 270 Va. 112, 119 (2005)). "When the constitutionality of a statute is challenged, we are guided by the principle that all acts of the General Assembly are presumed to be constitutional." *Id*. at 629-30.

Virginia appellate courts have repeatedly recognized that "the parents' right to autonomy in child rearing is a fundamental right protected by the Fourteenth Amendment of the United States Constitution." *Hawkins v. Grese*, 68 Va. App. 462, 471 (2018) (quoting *Williams v. Williams*, 24 Va. App. 778, 780 (1997), *modified and aff'd*, 256 Va. 19 (1998)). "Custody and visitation disputes between two fit parents [necessarily] involve one parent's fundamental right pitted against the other parent's fundamental right." *Yopp v. Hodges*, 43 Va. App. 427, 438 (2004) (quoting *Griffin v. Griffin*, 41 Va. App. 77, 83 (2003)).

Accordingly, Code § 20-124.2 vests courts with the authority to determine custody and visitation arrangements by balancing the competing rights consistent with "the best interests of the child." In doing so,

> [t]he court shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children. As between the parents, there shall be no presumption or inference of law in favor of either. The court shall give due regard to the

primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest.

Code § 20-124.2(B). Code § 20-124.3 then delineates ten factors to be weighed in assessing the best interests of children in custody and visitation matters, including "other factors as the court deems necessary and proper to the determination." Code § 20-124.3(10); *Copeland v. Todd*, 282 Va. 183, 197 (2011).

Father argues that the best-interests standard is unconstitutional and that instead, there should be a presumption of equal custody rights for both parents "that can only be disregarded if the health or safety of a child may be negative[ly] impacted by such an award." But Virginia's courts have repeatedly validated the constitutionality of this best-interests test. *See Griffin*, 41 Va. App. at 83 ("[C]ustody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock."); *Copeland*, 282 Va. at 197 ("In [custody] cases, 'the best interests of the child are paramount and form the lodestar for the guidance of the court in determining the dispute.'" (quoting *Bailes v. Sours*, 231 Va. 96, 99 (1986))); *Yopp*, 43 Va. App. at 440 (affirming the trial court's application of the best-interests test). Considering all this binding authority, we cannot say that Chapter 6.1 or any of its provisions are unconstitutional. And Father does not claim that the court applied Chapter 6.1 to the Guerrettaz custody dispute in any unconstitutional manner.

Additionally, Father quotes *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977), in arguing that the best-interests standard infringes on children's "reciprocal right to the integrity of the family, from not being dislocated from the 'emotional attachments that derive from the intimacy of daily association,' with the parent." However, we cannot address Father's argument.

Simply put, Father lacks standing to assert the rights of his children, who are not parties here.

Unless a statute provides otherwise, our general rule with respect to third party standing is that

an individual "may challenge the constitutionality of a law only as it applies to him or her."

*Coleman v. City of Richmond*, 5 Va. App. 459, 463, *reh'g denied*, 6 Va. App. 296 (1988). "That

the statute may apply unconstitutionally to another is irrelevant; one cannot raise third party

rights." *Id.*

There are exceptions to the standing rule that apply "to certain challenges under the First

Amendment, and 'where individuals not parties to a particular suit stand to lose by its outcome

and yet have no effective avenue of preserving their rights themselves.'" *Tackett v. Arlington

Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 325 (2013) (quoting *Tucek v. Commonwealth*, 44

Va. App. 613, 617 n.3 (2004)). Our court has already considered whether this latter exception

applied to a non-biological mother hoping to assert the rights of the minor child she had raised.

*Hawkins*, 68 Va. App. at 482. The court found that the key inquiry was whether the interests of

the parent and child were parallel or divergent. *Id.* at 482-83.

Here, Father's interests are not parallel with the interests of his children. Indeed, they

appear to conflict. Father sought primary physical custody, whereas all three children expressed

a desire for, at most, a 50/50 arrangement. The children's guardian ad litem believed it was in

the children's best interests that Mother have primary physical custody and sole legal custody.

And the court, who interviewed the two oldest children in camera, agreed.

Finally, even if Father had standing, he has not explained why, if Chapter 6.1 is

constitutional with respect to the parents involved, it would be unconstitutional as to the

children.[4]

---

[4] Father's "failure to provide legal argument and authority as required by Rule 5A:20 leaves [this Court] without a legal prism through which to view his alleged error" and we therefore cannot consider it. *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017).

II. The trial court did not err as to various procedural issues.

Father next raises procedural issues with how the court handled the hearings on his petitions for custody and modified child support, assigning error to several of the court's decisions in conducting the October and November 2024 hearings: (i) calling Father to present his case before Mother at both hearings, (ii) preventing Father from delivering a closing argument at the custody hearing, (iii) proceeding with the custody hearing without the youngest child present to testify, and (iv) dismissing his witness.

"Custody and visitation matters are reviewed for abuse of discretion." *Brandon v. Coffey*, 77 Va. App. 628, 635 (2023). "[T]he trial court has broad discretion in conducting a trial, and we will not disturb its rulings on that subject absent an abuse of discretion." *Justus v. Commonwealth*, 222 Va. 667, 677 (1981). Further, we presume that the lower court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)).

*A. The court did not err by requiring Father to present his case first.*

We begin with Father's argument that the circuit court abused its discretion by requiring him to present his case before Mother presented hers. Although he does not specify, Father appears to refer to the October 21 hearing on the final determination of custody and parenting time, where he objected to the court's prompting him to present first, citing his belief that he was the respondent.[5] The court explained:

> As I see it and as I've done since I've been on the bench for the
> last nine years, what we are now filling in is what has happened
> since September 30, 2020 and the last court order. I say that for a

---

[5] The transcript for this hearing is incorrectly dated as February 2, 2025. This custody hearing took place on October 21, 2024.

couple of reasons. There is no reason to start from the beginning again because the [c]ourt has heard that evidence and the [c]ourt's made the best interest findings and rulings each step along the way in the five prior orders. And, secondly, Mr. Guerrettaz, I know there was an issue about who's going forward. Here's the bottom line: If I don't hear any evidence, I'm going to enter a final order. And that final order is going to be based on the evidence that I've already considered through September 30, 2020. So from a logical standpoint, if there's something you want me to do different today, then you have to present evidence to bring me up to speed as to why the current temporary order shouldn't become the final permanent order.

Father then thanked the court and proceeded with his case. Now, Father argues that this was an abuse of discretion because he was the respondent and not the moving party. He asks this Court to reverse and remand with instructions to provide a new trial in which Mother presents her case first.

The circuit court did not abuse its discretion by prompting Father to present his argument first. The court scheduled the October hearings for consideration of Father's "Motion to Reconsider the Court's Pendente Lite Relief as to Custody," in which Father requested "primary custody of the children with the parties sharing legal custody and the Mother having a generous visitation schedule as the Court shall degree [sic]" or, in the alternative, "a generous visitation schedule that is a split of the children's time 50% for the Mother and 50% for the Father." In the motion, Father included several pages explaining why he was better suited than Mother to care for their three children. Thus, although Father is correct that, in general, the party bearing the burden of proof typically presents his case first, *see Doss v. Commonwealth*, 42 Va. 557, 560-61 (1844) ("[T]he party having the affirmative of the issue has the right to open and conclude the argument before the jury."), he fails to recognize that, if anything, he bore the burden of proof as the party seeking a change in custody at this point in the case. As the circuit court explained, if neither party had introduced any evidence and custody thus went undisturbed, Father would

- 9 -

receive an adverse judgment, not Mother. And stepping back from Father's motion to reconsider, while Mother originally filed for child support and custody, Father counterclaimed for the same, so the court properly exercised its discretion in determining the order in which arguments would be presented.

Similarly, Father claims that the court incorrectly treated the November 18 child support hearing as one for modification and not original determination, thus directing Father to present his evidence first and "misallocating the burden of proof" by "requiring [Father] to prove a material change in circumstances despite [the fact that] . . . there had only been pendente lite orders in the past."

As we have explained, the order for introducing evidence lies in the trial court's discretion and will be reversed only for an abuse of discretion. *See Petry v. Petry*, 41 Va. App. 782 (2003). We cannot find any abuse of discretion in the circuit court's requiring Father to present first and to show a material change in circumstances. Under Code § 20-103, courts may issue binding child support orders while the underlying action is still pending. Here, the circuit court issued several pendente lite orders before entering its final child support order on May 23, 2019. "Rule 1:1(b), subtitled 'General Rule: Orders Deemed Final,' provides '[u]nless otherwise provided by rule or statute, a judgment, order, or decree is final if it disposes of the entire matter before the court.'" *Ritchie v. Commonwealth*, 74 Va. App. 328, 333 (2022) (alteration in original). The May 23 order was entered after the final divorce decree on April 12 and left no child support matters unresolved, ordering that "[Father's] obligation to pay child support as to each child shall continue until the child reaches 18 years of age[.]" Because the order disposed of the entire matter before the final court, it was a final order. Therefore, when Father filed his "Motion to Reconsider Child Support" years later in March 2023, he undertook the burden of demonstrating a material change in circumstances. *See Antonelli v. Antonelli*, 242 Va. 152, 154

- 10 -

(1991) ("When invoking the divorce court's continuing jurisdiction under Code § 20-108, following entry of a final decree of divorce, a party seeking a change in court-ordered child support has the burden to prove by a preponderance of the evidence a material change in circumstances justifying modification of the support requirement."). Thus, the circuit court properly treated the November 18 hearing as one for modification and not original determination. Accordingly, the court conducted the proper inquiry and reasonably required Father to present his case first.

### B. The court did not err by finding that Father's allotted time expired.

Father next challenges his inability to deliver a closing argument or cross-examine Mother.[6] He claims that, by permitting Mother but not Father a closing argument, the circuit court "utterly denied" Father his "due process and equal protection rights." But Father was not denied the opportunity to deliver a closing argument or cross-examine Mother; he simply ran out of his allotted time.

Specifically, before the hearing, the court informed both parties that they had three hours to present their arguments. The court reiterated this after the parties delivered their opening statements. By the time Father called Mother to the stand for direct examination, the court cautioned Father that he had used 133 of his 180 minutes. The court warned Father again when he had only 20 minutes remaining. When Father later requested to cross examine Mother, the court explained,

> You exhausted your time. I said at the outset you get time for
> opening, direct, cross, and closing. And I cautioned you a number
> of times during Dr. Peterson's testimony. You had him on the
> stand for over an hour and forty minutes. I tried to break it up and

---

[6] We assume without deciding that Father properly preserved these arguments. *See, e.g.*, *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 159 (2004) (assuming without deciding that biological father properly preserved his arguments on appeal from termination of his parental rights).

let you know that you've got this window and you are utilizing
your window in a manner that may not be the most prudent way.

At that point, Father did not object or request more time. Thus, at the close of the case, the court prompted Mother's counsel for final remarks but did not do the same for Father, who did not object.

"A trial court has broad discretion in the supervision of opening statements and closing argument," *O'Dell v. Commonwealth*, 234 Va. 672, 703 (1988), and this Court does not disturb such decisions "unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced," *Canipe v. Commonwealth*, 25 Va. App. 629, 639 (1997) (quoting *Cohen v. Power*, 183 Va. 258, 262 (1944)); *see also* Rule 4:15(d) ("A court may place reasonable limits on the length of oral argument."). Father provides no explanation for how he was prejudiced by not delivering a closing argument, nor how the court's decision was unconstitutionally discriminatory. Indeed, the court gave each party equal time, confirmed the three-hour restriction at the outset of the hearing, and repeatedly warned Father about his remaining time. Nor does Father show any prejudice caused by his inability to cross-examine Mother. To the contrary, he had the opportunity to question her for 47 minutes on direct examination. *See Lanzalotti v. Lanzalotti*, 41 Va. App. 550, 556 (2003) (finding that appellant had waived his argument about time restrictions imposed in the lower court because he did not object or proffer what additional evidence he would have presented if allowed more time). Ultimately, Father has only himself to blame for using all his time before closing arguments.[7]

---

[7] On appeal, Father also challenges the circuit court "refus[ing] to allow [Father] to call himself as a witness in his own case." We cannot find anywhere in the record where Father requested to "call himself," nor does Father provide us with any guidance as to when this occurred. If the circuit court did not have the chance to consider an argument, then we cannot consider it either. *See Scialdone*, 279 Va. at 437.

## C. *The court did not err by proceeding in the absence of the youngest child.*

Additionally, Father alleges a violation of his due process rights when the circuit court "[f]ailed to allow [him] to call his youngest son to testify." He claims that this contradicted the court's own instruction that Mother bring the child to the October 21 hearing and that, regardless, Father had served the child with a subpoena.

The record provides no evidence to support these assertions. Instead, it reveals the court's colloquy with Father at the October 21 hearing:

> [Father:] So I just confirmed with the clerk here in the front office that [the youngest child] did receive the subpoena, just like [the older children] did. Furthermore, at the beginning of us having the conversation regarding the children testifying, it was made clear that [Mother] had to bring the children to court because she's the custodial parent. So I'm a little confused how [the youngest child] is not in court today when he also expressed the desire to be able to have his feelings heard.
>
> . . . .
>
> THE COURT: So I'm just looking at my file and it appears that -- I see a subpoena for [the older children], but I don't see one for [the youngest]. . . .
>
> . . . .
>
> [Mother:] The sheriff arrived and he gave me the subpoenas for [the older children], and then gave a signature for both. But I didn't receive one for [the youngest].
>
> THE COURT: Okay. Again, I don't see it in the file.
>
> [Father]: Be that as it may, Your Honor, in the original motion for having the children testify, it was made clear in that motion that the custodial parent was to bring all three children.
>
> THE COURT: If they were subpoenaed. If they were subpoenaed. She was responsible for bringing the kids, assuming they were

- 13 -

subpoenaed.  You are not going to bring kids to court if they are not going to be subpoenaed.

[Father]: And as I said, Your Honor, I have a note here that says he was subpoenaed.

THE COURT: Well, hearing from [Mother] that she received service from the deputy as it related to the older children and she didn't receive that service as it relates to [the youngest].  And [the youngest] is eight, right?

[Father]: Yes, Your Honor.

THE COURT: And he's got a Guardian ad Litem who's been involved in this case for four-and-a-half years.  And you have Dr. Peterson's evaluations that are both in evidence that set forth what each child has told him.

The court then proceeded with separate, in camera interviews of the two older children.[8]  The court took considerable time to investigate whether the youngest children received a subpoena, and found credible Mother's claim that only the two older children had received subpoenas.  The court found no record of the youngest being served.  It then determined that the youngest child's interests would be represented at the hearing by the guardian ad litem and by the psychologist's evaluation.  This was not an abuse of discretion.  If Father wanted to ensure that the youngest child would testify, he should have confirmed service before the hearing.

D. *The court did not err by dismissing Father's witness.*

Finally, Father appeals the court's dismissal of his witness, Jim Ledbetter.  Counsel for Mother objected to Ledbetter testifying on the basis that Father did not disclose Ledbetter as a

---

[8] Father also assigns error to the circuit court interviewing the children in camera rather than permitting them to testify in court.  But we cannot consider this argument because Father waived it below.  *See Sine v. Commonwealth*, 87 Va. App. 285, 292 (2026) ("A litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory,' or else such arguments are waived." (quoting *AV Auto., L.L.C. v. Bavely*, 85 Va. App. 559, 577 (2025))).  When the court asked Father if he wanted the court to interview the two older children in camera, Father responded, "Yes, your Honor.  That's exactly what I want."

witness until after the deadline set by the scheduling order. When the court prompted Father for a response, Father stated, "I'm okay with having Mr. Ledbetter dismissed." The court then confirmed Father's wishes before ultimately dismissing Ledbetter. Now, on appeal, Father's approbating and reprobating prevents us from considering this issue. *See Commonwealth v. Holman*, 303 Va. 62, 71 (2024) ("Under settled principles, a litigant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009))).

III. <u>The trial court did not err in declining to reopen the child support order.</u>

Father also challenges the circuit court's refusal to reopen its child support order. He avers that (i) the court abused its discretion by blocking certain evidence from admission, (ii) the court erred in failing to find a material change in circumstances, and (iii) the court erred as a matter of law by deeming Father to be unemployed voluntarily.

*A. The court did not err by refusing to admit certain evidence.*

We start with Father's evidentiary challenges. He assigns error to the court's decisions to block Father's testimony about his own disability as well as Father's VA letter confirming his disability. "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Reaves v. Tucker*, 67 Va. App. 719, 736 (2017) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). No such abuse occurred here.

At the November 18 hearing, Father moved to admit two letters from the VA: one from 2021 and another from 2024. Both letters classified Father as "permanently disabled due to [his] service-connected disabilities." Mother's counsel objected to the admission of each, citing

relevance and hearsay grounds, respectively. On appeal, Father claims that the 2024 letter was erroneously excluded on authenticity and hearsay grounds.

To begin, Father misunderstands the court's ruling as rooted in authenticity grounds. Rather, the court mentioned the lack of authentication as one of the problems associated with hearsay evidence in general and this letter in particular. *See* R. 2893 ("[T]here is no individual present to authenticate the document, to explain the document. That's where the hearsay objection is."). So the remaining question before us is whether the circuit court abused its discretion by excluding the 2024 letter as inadmissible hearsay evidence.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801. It is not admissible without an exception. Va. R. Evid. 2:802. Father contends that the letter was not hearsay because it "was not for the purpose of proving the truth of the matter asserted but rather was intended to explain why [Father] was receiving the disability payment that he said he was . . . regardless of whether the VA's reasoning was true or not."[9] We disagree.

As we noted above, "[d]ecisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Reaves*, 67 Va. App. at 736 (quoting *Michels*, 47 Va. App. at 465). Not only did the court correctly apply Virginia's hearsay doctrine, but the court also took significant time to explain the concept to Father and prompted him several times to offer a hearsay exception that might allow

---

[9] He also avers that, in the alternative, the VA letter fit several hearsay exceptions: Mother had adopted it by admitting the letter into the record with regard to custody (Virginia Rule of Evidence 2:803(0)), the VA produced the letter in its regularly conducted activity (Rule 2:803(6)), the letter was a government record (Rule 2:803(8)), and the letter established Father's interest in disability income (Rule 2:803(14)). We do not address these alleged exceptions because Father did not raise them at trial or otherwise give the court any opportunity to consider them. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

for admission of the letter. Father had already testified to, and admitted evidence of, his $4,084 monthly disability income, so his suggestion on appeal that he sought to admit the letter merely to explain his disability income falls short. What is more, the VA letter merely checked a box indicating that Father was disabled without providing color as to how the VA reached that conclusion or what it meant. Thus, there was no way for Mother to cross-examine a representative from the VA about the contents of the letter. The court correctly excluded it.

Father counters that, even if the VA letter was not admissible, the court nonetheless abused its discretion by excluding his testimony "as to his own disability[,] the impact it had on his life and the income he received because of that disability, all of which was in his personal knowledge." On briefs, Father specifically points to the following exchange that occurred after the court sustained Mother's objection to the VA letter:

> [Father]: Well, Your Honor, my income -- I'm going to just state my income as $4,084.32 that comes from the VA. That income is for a disability payment at 100 percent disability.
>
> [Counsel for Mother]: Objection to the hearsay part of that, Judge, about the disability. I don't object to the income part.
>
> THE COURT: I'll sustain the objection.

The court excluded this testimony for the same reason as the letter—Father relied on another party's out-of-court statement that he was disabled to prove that he was, in fact, disabled. Contrary to what Father now claims on appeal, the court did not block him from explaining how his disability had impacted his life. Indeed, the court allowed Father, over counsel's objections, to argue extensively as to his earning capacity. Moreover, the court permitted Father to make closing remarks at the November 18 hearing, during which he explained:

> The behavior that I showed in even dealing with this stressful situation in my life, facing losing my freedom, the consequences of my actions, etcetera, these are all symptoms of my PTSD. These are all symptoms of my disability. It is now that I'm able to not

> wear it as a badge of pride, but have the appropriate coping
> mechanisms because of daily fitness routines, because I'm so
> adamant about not drinking alcohol, doing the things I need to do
> to not disrupt my sleep, and making my effort, as poor as it may
> be, to fight for my children. It's because of those things that I've
> implemented.

Thus, we disagree that the court prohibited Father from testifying as to his personal experience with his disability, and we find no error in its denying entry of the VA letter into evidence.

### B. *The court did not err by failing to find a material change in circumstances.*

Father also challenges the court's holding that he had failed to show the requisite material change in circumstances to justify reconsideration of child support. "The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Da'mes v. Da'mes*, 74 Va. App. 138, 144 (2022) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)).

"In order to invoke the court's continuing jurisdiction to modify its decree," under Code § 20-108, "the party seeking a change has the burden of proving, by a preponderance of the evidence, a material change in circumstances justifying a modification of the decree." *Edwards v. Lowry*, 232 Va. 110, 112 (1986) (citing *Hammers v. Hammers*, 216 Va. 30, 31 (1975)). A party seeking a reduction in support payments must make a full and complete disclosure as to his ability to pay. *Id.* Those who claim an inability to pay must demonstrate that this is caused by something other than their own voluntary act or their own neglect. *Id.* at 112-13.

At the November 18 hearing, the circuit court heard extensive argument from both parties as to their financial abilities. Father introduced evidence of Mother's income as well as his own. He testified as to his unemployment, explaining that he had made no efforts to find employment and that he could not work due to his disabling PTSD. But he presented no evidence to

substantiate his inability to work. *See supra* Section III(A) (discussing the admissibility of the VA letter that allegedly documented Father's disability). Indeed, Father presented evidence suggesting the opposite. As a result, the court denied his motion, explaining:

> [I]n the [c]ourt's mind there is absolutely no doubt that you can obtain and maintain employment. Because that's what you did for many years after you served the country. . . . I have no evidence before me, credible evidence, that would lead me to the conclusion that you are incapable of obtaining and maintaining employment. . . .
>
> I'm looking at the deposition. I heard what you testified to earlier. Once you were approved for disability and once this [c]ourt had entered the order ordering you to financially support your children, you walked away from that job. You voluntarily walked away from that job and you voluntarily chose not to gain any additional employment. . . .
>
> . . . .
>
> [T]he [c]ourt is not going to grant your motion to amend, finding that you haven't been transparent, you haven't provided the [c]ourt with the necessary information from a starting point to where we are today. But if I had, that number may have been greater than the support order that is currently in place.

Given all of this evidence, we cannot say that the circuit court's judgment was "plainly wrong or unsupported by the evidence." *Da'mes*, 74 Va. App. at 144 (quoting *Niblett*, 65 Va. App. at 624). The circuit court, after presiding over the case for over six years, was in the best position to judge the parties' earning capacities. And it did not abuse its discretion in doing so. It noted that, if anything, a reconsideration of the existing order would likely result in Father paying even more because "the [c]ourt would have imputed an income that would have been significant on your side of the ledger."

*C. The court did not err as a matter of law in finding Father voluntarily unemployed.*

Father also contends that by acknowledging his status as a disabled veteran but finding him voluntarily unemployed, the circuit court "violated a contrary finding by the federal government in violation of the Supremacy Clause and relied on evidence beyond the record of this case and contrary to it." This argument fails because (i) the Supremacy Clause does not apply, (ii) the record contains no evidence that Father's disability prevents him from working, and (iii) the circuit court had ample opportunity to observe Father as a pro se litigant over the course of the divorce dispute and cited evidence in support of its finding.

First, the Supremacy Clause does not apply here since there is no conflict between state and federal law. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.'" (citations omitted) (quoting *Felder v. Casey*, 487 U.S. 131, 138 (1988))). Father summarily claims that "because federal law says that the Appellant is unable to work, no trial court may apply Virginia law to find that he is able." For support, he cites 38 C.F.R. § 3.340(a)(1), which provides that "[t]otal disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation."

But Father provides no support for his argument that Virginia courts are bound by the VA's disability ratings. Indeed, even federal courts are not bound by such ratings. *See, e.g.*, *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012) ("[W]e hold that, in making a disability determination, the [Social Security Administration] must give substantial weight to a VA disability rating. However, . . . an [administrative law judge] may give less

weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.").

Perhaps more importantly, Father fails to recognize that the record does not contain any determination by the VA as to his ability to work. Indeed, because the court deemed the VA letter inadmissible hearsay, there is no evidence of the VA's disability designation. The record merely shows that Father is a disabled veteran. Because there is no evidence of any federal ruling or designation before us, we cannot say that the circuit court violated the Supremacy Clause.

Further, the record contains no evidence that contradicts the court's finding about Father's ability to work. It does show, however, that Father maintained employment for many years up to the time that he received his disability rating. The court also remarked that "you present and have been presenting over the years as extremely intelligent and very capable," referring to Father's legal representation of himself. This Court must defer to the circuit court's factual findings absent an abuse of discretion, which we cannot say is present here. Ultimately, we affirm its decision to retain Father's child support obligation.

IV. <u>The trial court correctly refused to reopen its prior equitable distribution order.</u>

Father next challenges the court's refusal to reopen its prior equitable distribution order. Father argues that the court erred as a matter of law when it concluded it lacked jurisdiction to adjudicate his motions for equitable distribution of the Illinois property and for refinancing of the mortgage on the former marital home.[10] We disagree and affirm the court's decision.

---

[10] Father also alleges, for the first time on appeal, that the equitable distribution determination violated the Supremacy Clause or deprived him of his "liberty interest" in the Illinois property. Because he invokes no exceptions to Rule 5A:18 on briefs, he has waived these arguments. *See, e.g.*, *Peery v. Commonwealth*, 87 Va. App. 296, 315 n.5 (2026) ("[Appellant] did not raise this issue in the circuit court, and he has not invoked the good cause or ends of justice exceptions, so we do not address it here." (citing Rule 5A:18)).

A "challenge to the circuit court's determination that it lacked jurisdiction" in a particular case "presents a question of law subject to de novo review in this Court." *Ashland, LLC v. Va.-Am. Water Co.*, 301 Va. 362, 368 (2022). Similarly, "[w]e give de novo review to the interpretation of statutes and rules of court." *Tatusko v. Commonwealth*, 79 Va. App. 721, 730 (2024). And "[c]onstitutional arguments present questions of law that appellate courts review de novo." *Chaphe v. Skeens*, 80 Va. App. 556, 567 (2024).

Father first raised these equitable distribution matters five and a half years after the court entered its final divorce decree resolving all matters of equitable distribution. But he argues that, because the final divorce decree continued the matters of child support, show cause, and attorney's fees, the court retained jurisdiction over all divorce-related matters, including the equitable distribution award, until it issued a final order on all matters.

"All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for [21] days after the date of entry, and no longer." Rule 1:1(a). "Once a final judgment has been entered and the [21] day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case." *Dobson v. Commonwealth*, 76 Va. App. 524, 529 (2023) (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 563 (2002)). Even though an order that "retains jurisdiction to reconsider the judgment or to address other matters still pending" is not final, *Super Fresh Food Mkts*, 263 Va. at 561, this does not necessarily mean that a final divorce/equitable distribution order leaves "other matters still pending" when it continues issues related to custody/child support. *Id.*

Instead, as we have said,

> A plain reading of [Code § 20-107.3] makes clear that . . . the
> General Assembly intended to provide a circuit court with the
> discretion to effectively finalize the issue of divorce from the bond
> of matrimony independent of other ancillary issues, such as

- 22 -

> equitable distribution and support, and adjudicate them separately—effectively transforming one case into two.

*Friedman v. Smith*, 68 Va. App. 529, 539-40 (2018). "Upon the proper exercise of such discretion, the order granting the divorce becomes final [21] days after entry pursuant to Rule 1:1." *Id.* at 540. This Court also observed that "'final decree of divorce' clearly suggests a statutory classification of finality for the purposes of appeal." *Id.*

Here, the circuit court itself explained many times that it had exercised its discretion to finalize the divorce and equitable distribution matters while retaining jurisdiction over the custody and child support matters. *See, e.g.*, R. 3015-3018 (explaining why the court waited so long to issue a final order as to custody but immediately ruled on the divorce and equitable distribution). *Friedman* permits this. *See Friedman*, 68 Va. App. at 539-40. Thus, because 5.5 years had passed since the final equitable distribution determination—much more than the 21 days during which the court retained jurisdiction—the court did not err by holding that it lacked jurisdiction to rule on the motions to reconsider.[11]

## V. The circuit court did not err in awarding Mother attorney fees.

Finally, Father argues the circuit court's decision to award Mother $30,000 in attorney fees was an abuse of discretion.

"[A]n award of attorney's fees and costs 'is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case.'" *Jones v. Gates*, 68 Va. App. 100, 105 (2017) (quoting *Mayer v. Corso-Mayer*, 62 Va. App. 713, 731 (2014)). "[T]he key to a

---

[11] When the trial court proposed, sua sponte, that any proceeds from the Illinois sale go first towards equitable distribution, then child support, then attorney's fees, and lastly GAL fees, Father responded, "I have no problem with that." He certainly did not object and argue that this ruling violated his equal protection rights, as he now argues on appeal. This argument is thus waived on appeal. *See Scialdone*, 279 Va. at 437 ("To satisfy [Rule 5A:18], 'an objection must be made . . . at a point in the proceeding when the trial court is in a position . . . to rectify the effect of the asserted error.'" (second alteration in original) (quoting *Johnson*, 264 Va. at 33)).

proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." *Conley v. Bonasera*, 72 Va. App. 337, 350 (2020) (alterations in original) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277 (1985)).

Mother presented evidence at trial that her attorney fees and costs totaled $70,000. She supported the reasonableness of this amount with an affidavit from her counsel documenting the services rendered and costs incurred. Further, the record shows that discovery was protracted, that the court held multiple hearings on motions to compel, and that Father repeatedly declined to endorse orders, requiring additional hearings. Here, the circuit court concluded that, after considering "all of the circumstances, all of the litigation that has occurred in the case," the award of $30,000 was reasonable.

Father claims that the court abused its discretion by awarding attorney fees "when there has been no finding that the paying party has neither been unnecessarily litigious nor drawn the case out," citing *West v. West*, 53 Va. App. 125 (2008). This is not so. In *West*, both parties' litigiousness was one of the many reasons that the trial court declined to award any attorney's fees, and this Court affirmed that decision on appeal. *Id.* at 136. Far from requiring a finding of unnecessarily litigiousness or deliberate delay before approving an award of attorney fees, *West* emphasizes the broad discretion trial courts have in this area. *Id.* ("We will reverse the trial court's decision whether to award attorney's fees to a party only where the record shows a clear abuse of discretion.").

Considering all the circumstances, we cannot say that the circuit court abused its discretion in awarding Mother $30,000, less than half of her attorney fees and costs.

CONCLUSION

For the reasons above, we affirm the judgment.

*Affirmed.*

- 24 -